IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>INNOVATIVE WEALTH BUILDERS,<br>INC., et al.,<br><br>Defendants. | CASE NO.   8-13-CV-123T-33EAJ |

**INDEPENDANT RESOURCES NETWORK CORP.'S
MOTION FOR MODIFICATION OF STIPULATED PRELIMINARY
INJUNCTION AND SUPPORTING MEMORANDUM OF LAW**

Independant Resources Network Corp. d/b/a IRN Payment Systems ("IRN"), by and through its undersigned counsel, hereby moves this Court (this "Motion") for the entry of an order modifying the Stipulated Preliminary Injunction entered by this Court on January 25, 2013 (D.E. 31). More specifically, IRN respectfully requests that this Court modify the Stipulated Preliminary Injunction to: (1) relieve IRN from any obligation to turn over funds in IRN's Reserve Account (defined below) to the Plaintiff or the Receiver until such time as the funds are due and payable to the account of Defendant Innovative Wealth Builders, Inc. ("IWB"); (2) allow IRN to apply the funds in IRN's Reserve Account to satisfy current and future claims against IWB for credits and chargebacks related to IWB's transactions; (3) establish a procedure for the orderly turnover of funds owned and held by IRN to the Receiver at such time as the funds become payable to the account of IWB; and (4) establish procedures for reporting of

chargeback claims made by customers of IWB and payments on account of such chargebacks in the ordinary course of IRN's operations, in order to assist the Receiver and Plaintiff in efficiently tracking claims that have been satisfied and the amount of funds that may become available to the Receiver at a future date. In support of this Motion, IRN respectfully represents as follows:

## JURISDICTION

1.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1331, 1337(a) and 1345.

2.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1391(b) and (c).

## BACKGROUND

3.  IRN is a payment card processor which processes credit and debit card transactions for merchants and businesses.

4.  On July 30, 2009, IRN entered into a Card Services Agreement with IWB whereby IRN agreed to provide credit card processing services (the "Services") for IWB, subject to certain terms and conditions. A copy of the Card Services Agreement, including the terms and conditions under which IRN provided credit card processing services for IWB, is attached hereto as **Exhibit "A."**

5.  Pursuant to the Card Services Agreement, IRN established a reserve account (the "Reserve Account") at First California Bank (the "Bank") as security against any costs, losses or expenses incurred by IRN or the Bank resulting from chargebacks and other charges related to the Services. A chargeback is the procedure by which a card transaction is returned as the result of a dispute by a cardholder. A chargeback may be incurred for six (6) months after a card transaction.

6.  On January 14, 2013, the Plaintiff filed a complaint against IWB and the other

Defendants requesting, among other things, (1) a preliminary injunction precluding various actions against or involving IWB and/or their alleged assets; (2) an order freezing IWB's assets and requiring turnover of certain alleged assets; and (3) the appointment of a receiver to recover property of IWB.

7. On January 14, 2013, this Court granted Plaintiff's request for a temporary restraining order (the "TRO") and appointed Mark J. Bernet as Temporary Receiver (the "Receiver").

8. On January 16, 2013, IRN received a letter from Plaintiff's counsel notifying IRN of the TRO and freeze of Assets[1] related to Defendants.

9. Upon receipt of the TRO on January 16, 2013, IRN placed a freeze on IWB's merchant account, stopping further withdrawals by IWB from its merchant account. IRN further timely provided Plaintiff's counsel with a sworn statement describing nature and value of Assets held by IRN as required by the TRO. A true and correct copy of the sworn statement of James F. Marchese provided to Plaintiff's counsel by IRN's counsel is attached hereto as **Exhibit "B."**

10. At the time IRN placed the freeze on IWB's merchant account, there was a total of $15,382.11 in the merchant account. As a result of the freeze, these funds were transferred into IRN's Reserve Account related to IWB. IRN has turned over the $15,382.11 recovered from IWB's merchant account to the Receiver.

11. On January 25, 2013, this Court entered the Stipulated Preliminary Injunction (D.E. 31) with substantially the same terms as the TRO.

12. On January 30, 2013, counsel for the Receiver sent a letter to IRN demanding not only that IRN turn over the funds recovered from IWB's merchant account (which IRN had

---

[1] As defined in the TRO and Stipulated Preliminary Injunction.

already agreed to do), but also demanding turnover of IRN's funds which are maintained in the Reserve Account. A true and correct copy of the letter from Receiver's counsel is attached hereto as **Exhibit "C."**

13. Nothing in the TRO or the Stipulated Preliminary Injunction allows the Receiver to demand turnover of funds that do not belong to IWB or any of the Defendants. Clearly such authority would violate IRN's constitutional right to due process. Furthermore, even if the funds of IRN in the Reserve Account were Assets of the Receivership (which they are not), the Receiver has filed to comply with 28 U.S.C. § 754, and as a result, has been divested of jurisdiction over the Reserve Account, which is located in California.

14. As explained below, the funds in the Reserve Account are not Assets of IWB or any of the Defendants, and are not held for the benefit of IWB or any of the Defendants. IWB and the Receiver, who stands in the shoes of IWB, have only a contingent claim to any monies remaining in the Reserve Account after satisfaction of all claims and chargebacks related to IWB's transactions.

## RELIEF REQUESTED

15. IRN respectfully asks this Court for relief from the Preliminary Injunction and any other orders entered in this proceeding to provide that: (1) IRN is excused from any obligation to turn over to the Receiver those funds in the Reserve Account which are not due and payable to IWB; and (2) IRN may apply the funds in the Reserve Account in partial satisfaction of its current and future claims against IWB for credits and chargebacks. IRN further requests this Court establish procedures for the orderly turnover of funds in the Reserve Account to the Receiver when they become payable to IWB, and establish procedures for reporting chargeback and claim activities to the Receiver and Plaintiff.

## BASIS FOR RELIEF REQUESTED

### A.  IRN IS THE OWNER OF THE RESERVE ACCOUNT AND ALL FUNDS IN THE RESERVE ACCOUNT.

16. A credit card transaction creates indebtedness. Pursuant to the Card Service Agreement between IRN and its merchants, including IWB, the merchant assigns all of its rights, title and interest in and to this indebtedness to IRN, as purchaser of the indebtedness. *See* Exh. A, §§ 3, 5 and 16. Under the Card Service Agreement, IRN is the owner of, and is entitled to, the proceeds of the indebtedness. *Id.* at § 5. IWB receives payment for the purchased indebtedness by the member bank's credit of "net settlement funds" to IWB's merchant account. *Id.*

17. Under the rules governing the Services, IRN is responsible for refunding, through credit card processing networks, monies paid by IWB's customers for contested transactions. Though the merchant, in this case IWB, is ultimately responsible to pay all chargebacks and other charges, the issuing bank takes the money for a chargeback from IRN. IRN then is to be reimbursed by the merchant. The Reserve Account is a source for such reimbursement.

18. The Reserve Account is owned and controlled by IRN. IWB has no access to funds in the Reserve Account, no ownership interest in the funds in the Reserve Account, and no control over the Reserve Account. The funds in the Reserve Account are held solely for the benefit of IRN and the Bank.

19. None of the monies used to fund the Reserve Account were monies placed in the account directly by IWB. Other than the $15,382.11 deposited from the merchant account after the freeze as explained in paragraph 9 above, the Reserve Account monies were the proceeds of the indebtedness purchased by IRN resulting from card transactions. As such, these were monies which were assigned to IRN pursuant to the Card Services Agreement and deposited into the Reserve Account by IRN. IWB's right to these monies is conditional, and the conditions have

not yet been fully satisfied.

20. IWB has no right to receive funds deposited in the Reserve Account until such time as all chargebacks rights related to IWB's transactions have expired. The Card Services Agreement provides in relevant part:

> Any funds in the Reserve Account may be held until the later of (a) the expiration of any potentially applicable chargeback rights in respect of purchased indebtedness under the rules and regulations of the card associations or network organizations and (b) the period necessary to secure the performance of Merchant's obligations under this Card Services Agreement, which holding period may extend beyond termination of this Card Services Agreement.

Exh. A, §15. Accordingly, the monies in the Reserve Account are not yet IWB monies.

**B.  IRN'S OWNERSHIP OF THE RESERVE ACCOUNT AND SECURITY INTEREST IN THE PROCEEDS ARE SUPERIOR TO ANY CLAIM OF THE RECEIVER TO THE FUNDS IN THE RESERVE ACCOUNT.**

21. Merely being appointed as receiver does not provide the Receiver with any security interest or other right superior to IRN's ownership of the Reserve Account and its security interest in the funds held therein. *See Maxl Sales Co. v. Critiques, Inc.*, 796 F.2d 1293, 1297 n.2d (10th Cir. 1986) (noting the general rule of law that "appointment of a receiver does not determine any rights nor destroy any liens.").

22. Generally, a receiver is in no better position and has no greater security interest in the property over which he or she takes possession of as that position or security interest held by the party for whom he is acting. *In re Real Property Located at [Redacted] Jupiter Drive, Salt Lake City, Utah*, No. 2:05–CV–1013, 2007 WL 7652297, at *4 (D. Utah Sept. 4, 2007) ("It is … well-established that 'a receiver holds the property coming into his hands by the same right and title as the person for whose property he is receiver, subject to liens, priorities, and equities existing at the time of his appointment.'") (quoting *Cates v. Musgrove Petroleum Corp., Inc.*, 376 P.2d 819, 821 (Kan. 1962)).

6

23. In other words, the Receiver is akin to a successor in interest to the entity over whom the receiver is acting and those same equities and defenses that existed against that entity prior to the Receiver's appointment remain valid and enforceable against the receiver. *See S.E.C. v. Credit Bancorp, Ltd.*, 386 F.3d 438, 446 (2d Cir. 2004) ("'[A] receiver appointed by a federal court takes property subject to all liens, priorities, or privileges existing or accruing under the laws of the State.'") (quoting *Marshall v. People of New York*, 254 U.S. 380, 385, 41 S.Ct. 143, 65 L.Ed. 315 (1920)); *Lankenau v. Coggeshall & Hicks*, 350 F.2d 61, 66–67 (2d Cir. 1965) (stating a federal court receiver takes property subject to a perfected lien or other established priority right).

24. Therefore, the Receiver does not have any increased right to the funds in the Reserve Account than did IWB prior to the Receiver's appointment. IRN has full control and ownership of the Reserve Account and has the right to apply any and all funds in the Reserve Account to credits and chargebacks related to IWB's transactions. Hence, the Receiver should not be able to mandate the turnover of the funds in the Reserve Account to the detriment of IRN, when IWB has no right to the funds until chargebacks are processed. *See Federal Trade Commission v. Transcontinental Warranty, Inc.*, No. 09–C–2927, 2009 WL 7652297 (D. N.D. Ill. Dec. 22, 2009) (Denying receiver's motion for turnover of funds withheld by servicer until servicer's refund obligations were satisfied).

25. It would be inequitable to prohibit IRN from exercising its rights pursuant to the Card Services Agreement at this time. In light of IWB's current circumstances, there undoubtedly will be a number of cardholder disputes in the immediate future and it is not likely that IWB will assist in responding to these disputes, resulting in chargebacks. The chargeback process, which is already in place as a mechanism for consumers to obtain a return of their monies, is the most

efficient way for the consumers to obtain these monies. The Reserve Account would be the source used to fund these chargebacks. The chargeback process, however, will continue regardless of whether the Reserve Account is turned over.

26. IRN should be allowed to use the funds in the Reserve Account as the parties intended and as the law provides. Without the Reserve Account, IRN will have no readily available source to fund the chargebacks, threatening IRN's own existence and the jobs of its 70 employees. Should IRN be forced to turn over the funds in the Reserve Account to the Receiver, IRN would lose the access to the funds pledged as security against precisely these dangers, and, by relinquishing "control," IRN would lose its perfected security interest[2] in the funds and lose its right to recoupment. *See Transcontinental Warranty, Inc.*, 2009 WL 7652297, at *4 (D. N.D. Ill. December 22, 2009) (Denying receiver's motion for turnover where funds withheld by servicer were subject to recoupment defense).

27. IRN has already communicated its willingness to cooperate with the Plaintiff and has complied with its obligations under the TRO. IRN has offered to submit monthly reports which will set forth not only the amounts of chargebacks, but also cardholder names and card numbers, to assist the Plaintiff and Receiver in tracking claims that have been satisfied and monitoring the funds that may become available to the receivership. This also would be of assistance in that the information would be readily available rather than having to try and match cardholder names to card numbers, which would result in an expense to the Receiver, reducing the amount of monies potentially available to consumers. Once the time for chargebacks has expired, IRN would turn the balance then remaining in the reserve account to the Receiver or as

---

[2] IWB granted IRN and the Bank a possessory security interest in its accounts, including the Reserve Account and the proceeds thereof to secure the obligations of IWB to IRN or the Bank. *See* Exh. A §§ 15 and 16. Additionally, the Agreement gave IRN the right to withdraw funds from any of IWB's accounts to cover any and all fees or other funds owed IRN by IWB under the Agreement. *Id.*

otherwise directed by the Court. However, the Receiver has been unwilling to accept anything less than the immediate and complete surrender of IRN's reserve funds, which funds are not Assets of the Defendants or the receivership at this time.

## PRAYER FOR RELIEF

WHEREFORE, Independant Resources Network Corp. respectfully requests that this Court, pursuant to its equitable and statutory powers:

(a) grant IRN relief from the Preliminary Injunction in this matter as set forth herein;

(b) relieve the IRN from any obligation to turn over funds in the Reserve Account to the Plaintiff or the Receiver until such time as the funds are due and payable to the account of Defendant Innovative Wealth Builders, Inc.;

(c) allow IRN to apply the funds in the Reserve Account in partial satisfaction of its current and future claims against IWB for credits and chargebacks;

(d) establish a procedure for the orderly turnover of funds owned and held by IRN to the Receiver at such time as the funds become payable to the account of IWB;

(e) establish procedures for reporting of chargeback claims made by customers of IWB and payments on account of such chargebacks in the ordinary course of IRN's operations; and

(f) grant such other and further relief as the Court may deem proper.

Respectfully submitted,

/s/ David J. Lienhart
David J. Lienhart
Florida Bar No.:  0034640
dlienhart@ralaw.com
Roetzel & Andress
420 South Orange Avenue
CNL Center II, 7th Floor
P. O. Box 6507

9

Orlando, FL 32802-6507
Telephone: 407.896.2224
Phone: (407) 896.2224
Fax: (407) 835.3596
Attorneys for Independant Resources Network Corp d/b/a IRN Payment Systems

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)

I HEREBY CERTIFY that prior to filing this motion, on February 1, 2013, and February 4, 2013, I conferred with Benjamin F. Diamond, counsel for the Receiver, regarding the relief requested herein and he does not consent to such relief.

/s/ David J. Lienhart
David J. Lienhart

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served this 5th day of February, 2013, by CM/ECF to Richard T. Heiden, Esquire, 2723 State Road 580, Clearwater, Florida 33761, e-mail richardheiden@rthlaw.com; S. Spencer Elg, Esquire, 225 Peachtree Street NE, Suite 1500, Atlanta, GA 30303, e-mail selg@ftc.gov; Valerie M. Verduce, Esquire, 225 Peachtree Street NE, Suite 1500, Atlanta, GA 30303, e-mail vverduce@ftc.gov; Mark J. Bernet, Receiver, 1505 N. Florida Avenue, Tampa, FL 33602, e-mail mbernet@kasslaw.com; and via email to Receiver's counsel, Benjamin F. Diamond, Akerman Senterfitt, 401 E. Jackson Street, Suite 1700, Tampa, FL 33602, email Benjamin.diamond@akerman.com.

/s/ David J. Lienhart
David J. Lienhart