```
             UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF FLORIDA
                    TAMPA DIVISION
```

FEDERAL TRADE COMMISSION,

       Plaintiff,
v.                                    Case No.  8:13-cv-123-T-33EAJ

INNOVATIVE WEALTH BUILDERS,
INC., ET AL.,

       Defendants.
_____/

**ORDER**

This matter is before the Court pursuant to the Receiver's Amended Second Interim Application for Payment for Services Rendered and Costs Incurred (Doc. # 95), filed on August 21, 2013.  In the Fee Application, the Receiver requests fees in the amount of $54,457.00 and costs in the amount of $279.11, for services rendered from March 1, 2013, through July 20, 2013. For the reasons that follow, the Court grants the Fee Application in part after reducing the amount of fees sought by 50%.[1]

**I.**    **Background**

On January 14, 2013, the Federal Trade Commission initiated this action against Innovative Wealth Builders and its officers for violating the FTC Act and the Telemarketing

---

[1] The Court does not find the requested costs to be objectionable.

Sales Rules by engaging in "deceptive telemarketing campaigns throughout the United States designed to take money from already indebted consumers." (Doc. # 1). On that same day, the Court entered an Order appointing Mark J. Bernet, Esq. as the Receiver for Innovative Wealth Builders, Inc. and its affiliates, subsidiaries, divisions, or business or sales operations, wherever located (the "Receivership Defendant"). (Doc. # 11 at 14).

On January 25, 2013, the FTC and the Defendants entered into an agreed Preliminary Injunction barring deceptive telemarketing activities. (Doc. # 31). The agreed Preliminary Injunction contains a detailed list of the Receiver's official duties, including but not limited to, assuming full control of the Receivership Defendant; taking custody, control, and possession of the Receivership Defendant's assets; securing the business premises of the Receivership Defendant; conserving, holding, and managing all of the Receivership Defendant's assets; entering into contracts and purchasing insurance as necessary; preventing the inequitable distribution of assets; managing and administering the business of the Receivership Defendant; making necessary payments, such as rental payments; determining and implementing the manner in which the Receivership Defendant

will comply with the Orders of the Court and preventing violations of the law by the Receivership Defendant; instituting, compromising, adjusting, appearing in, and intervening in any lawsuits to protect the assets of the Receivership Defendant; issuing subpoenas; opening bank accounts; maintaining records; cooperating with law enforcement; and filing reports with the Court. (Doc. # 31 at 14-18).

On March 1, 2013, the Court conducted an evidentiary hearing on a Motion to Modify Preliminary Injunction filed by Independent Resources Network Corp. (d/b/a IRN Payment Systems) and other Motions. (Doc. # 60). The Receiver testified at the hearing and the matter of his fees was discussed. The Receiver indicated that he agreed to an hourly rate of $275.00 and that "Anybody who has standing can come and say that's too much if they – if they legitimately think that's the case." (Id. at 115).

In the current Fee Application, the Receiver requests an award of $54,457.00 in fees based on 184.6 hours at the hourly rate of $295.00. The Court takes this opportunity to express its legitimate concern regarding the fees thus far accumulated by the Receiver and his counsel in this action.

**II. Discussion**

3

As the Court expressed during the March 1, 2013, evidentiary hearing, the purpose of this action and of the receivership, is to conserve the resources available for payment to the victims of fraud in the instance that the FTC prevails.

Rather than conserving the funds so far identified and isolated for potential victim restitution, the Receiver and his team of professionals have expended significant sums that would otherwise be available to remediate alleged consumer fraud. Thus far, the Court has awarded the Receiver fees in the amount of $46,365.00 and costs in the amount of $880.24. (Doc. # 79). Those fees represented 168.6 hours expended by the Receiver at the hourly rate of $275.00. The Court has also paid the Receiver's counsel, Akerman Senterfitt, $36,463.00 in attorneys' fees and $334.11 in costs. (Doc. # 90).

The Court's prior awards were entered based on the Court's understanding that the FTC would scrutinize the Receiver's and his counsel's fee petitions and would play a part in safeguarding the funds for the victims of the alleged fraudulent scheme. It appears to the Court, however, that the FTC's current plan for the management of the asserts in this case is not working. The FTC is directed to find a less

4

expensive way of protecting the assets now in the Receiver's control.

This case, initiated on January 14, 2013, is in its infancy. Pursuant to the Case Management and Scheduling Order, the discovery deadline expires on October 11, 2013, the dispositive motions deadline is set for January 3, 2014, the pretrial conference is scheduled to take place on May 15, 2014, and the case is set for a non-jury trial during the Court's trial term commencing June 2, 2014. (Doc. # 78). If the Court were to continue to authorize the fees and costs requested at the current rate, the Court anticipates that the funds available at the conclusion of the case, if any, would be paltry. The Court must exercise its discretion to prevent the dissipation of assets that should be available for victim restitution should the FTC prevail on its claims against Defendants.

Thus, the Court determines that it is appropriate to reduce the fees requested by 50%. Myriad reasons exist to support the Court's fee reduction, *inter alia*: (1) the Receiver testified that he has agreed to an hourly rate of $275.00, however, in his Fee Application he requests compensation at the hourly rate of $295.00; (2) the Receiver is charging the same hourly rate as an attorney, but is

performing administrative services, such as supervising the packing of boxes; and (3) the Receiver has billed for unnecessary legal work.

Even when the Receiver represented to the Court that his hourly rate was $275.00, the Court felt that the fees so far incurred were excessive. The Court expressed its concern regarding the Receiver's fees during the March 1, 2013, evidentiary hearing. (Doc. # 60 at 101-103, 117, 140). Rather than alleviate the Court's pressing concern that "these fees [will] eat up the estate," the Receiver has augmented his hourly rate from $275.00 to $295.00. The Court is flabbergasted by the Receiver's implied request for an enhancement of his hourly rate in light of the Court's repeated warnings, enunciated at the evidentiary hearing, regarding excessive fees in this case.

The Court's examination of the Receiver's fee ledger also reveals the unsettling fact that the Receiver is charging an excessive rate for tasks that could be performed without incurring significant expense. Although the Court acknowledges that the Receiver is a keen attorney with an AV rating, it certainly does not require a person of such skill and distinction to supervise the packing of boxes and the

6

movement of those boxes from one facility to another.[2]

In addition, the fee ledger reflects that the Receiver has conducted many hours of legal research regarding claims against Defendants Innovative Wealth Builders ("IWB") and Independent Resources Networks ("IRN") and has prepared a yet-to-be-filed Complaint:

- 7/10/2013 "Analysis of potential claims against IRN and discussion with atty for FTC re various litigation matters" **1.8 hours**;
- 7/11/2013 "Analysis of potential 'aiding and abetting' claim against IRN (including legal research on Tew v. Chase Manhattan and Scholes v. Lehman)" **2.7 hours**;
- 7/12/2013 "Analysis of potential fiduciary duty claim against IRN and begin preparation of Complaint" **4.5 hours**;
- 7/13/2013 "Continued drafting of complaint against IRN, including legal research concerning negligence, breach of fiduciary duty and RICO" **6.0 hours**;
- 7/15/2013 "Preparation of RICO complaint, including legal research on RICO elements" **5.0 hours**;
- 7/17/2013 "Prepare complaint against IWB" **2.0 hours**;
- 7/18/2013 "Continued preparation of Complaint against IWB, including legal research on Rule 9(b) application to RICO allegations, legal research on aiding and abetting liability" **8.0 hours**;
- 7/19/2013 "Continued preparation of RICO complaint; legal research regarding

---

[2] Entries on the Receiver's fee ledger dated March 26, 2013, and March 28, 2013, reflect that the Receiver billed 12.5 hours for supervising "packing and moving of electronic and paper records from Clearwater Facilities" and "Moving Day - supervise moving of materials to new Largo Facilities" at the hourly rate of $295.00. (Doc. # 95-1 at 2).

7

>           allegations to support 'enterprise' element;
>           discussions with firm's in-house counsel
>           concerning RICO complaint; legal research re
>           predicate acts, including possible theft and
>           credit-card claims under state law" **7.0 hours**.

See (Doc. # 95-1 at 5).[3]

This single example, that the Receiver expended 37 hours at the suggested hourly rate of $295.00 to draft a proposed complaint that has not been filed and will likely never be filed, is emblematic of the problem here. In the Fee Application, the Receiver explains that he "prepared a draft complaint against IRN grounded upon several legal and equitable theories. The Receiver anticipates filing the Complaint after the depositions are concluded, provided that the depositions support the claims that the Receiver believes are viable." (Doc. # 95 at 9). The docket reflects, however,

---

[3] The Receiver's use of block billing also justifies a reduction of his requested fee. "One basis for reducing the requested number of hours is the use of block billing, which refers to the practice of including multiple distinct tasks within the same time entry." Bujanowski v. Kocontes, No. 8:08-cv-390-T-33EAJ, 2009 WL 1564263, at *2 (M.D. Fla. Feb. 2, 2009). "Block billing occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." Ceres Envtl. Servs. v. Colonel McCrary Trucking, LLC, No. 11-12787, 2012 U.S. App. LEXIS 8271, at *11 (11th Cir. Apr. 25, 2012). The Ceres court noted that block billing results in "imprecision in an attorney's records . . . a problem for which the opponent should not be penalized" and approved the use of across-the-board reductions to offset the ill effects of block billing. Id. (internal citations omitted).

8

that the deadline to amend pleadings passed on June 14, 2013. (Doc. # 78 at 1). It is shocking to this Court's conscience that the Receiver would bill for over $10,900.00 to prepare a proposed amended complaint in this action well after the expiration of the deadline for amending pleadings.

Enough is enough. As explained above, the Court determines that it is appropriate to reduce the Receiver's requested fee by 50%. Furthermore, the Court directs the FTC and the Receiver to coordinate their efforts to dramatically reduce excessive expenditures that have thus far characterized the administration of the assets available for victim recompense in the instance that the FTC prevails in this case.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

The Receiver's Amended Second Interim Application for Payment for Services Rendered and Costs Incurred (Doc. # 95) is **GRANTED** to the extent that the Receiver is awarded $27,228.50 in fees and $279.11 in costs.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 22nd day of August, 2013.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

9

Copies: All Counsel of Record